**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**
**OKLAHOMA CITY DIVISION**

| | |
|---|---|
| (1) WILLIAM SMOOT, Individually and For Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>(1) TJ INSPECTION, INC.,<br><br>  Defendant. | Case No. CIV-23-113-PRW<br><br>JURY TRIAL DEMANDED<br><br>FLSA COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Adam Smoot ("Smoot") brings this lawsuit to recover unpaid overtime wages and other damages from Defendant TJ Inspection, Inc. ("TJ Inspection") under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201, *et seq.*

2. Smoot worked for TJ Inspection as an Inspector.

3. Smoot and the Day Rate Inspectors (as defined below) regularly worked more than 40 hours a week.

4. But TJ Inspection never paid Smoot or the Day Rate Inspectors overtime for the hours they worked in excess of 40 hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, TJ Inspection pays Smoot and the Day Rate Inspectors a flat amount for each day worked (a "day rate") without overtime compensation.

6. TJ Inspection never paid Smoot or the Day Rate Inspectors a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to Smoot and the similarly situated Day Rate Inspectors.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because TJ Inspection maintains its headquarters in this District and Division.

10. Specifically, TJ Inspection maintains its headquarters in Oklahoma City, Oklahoma, which is in this District and Division.

## PARTIES

11. Smoot worked for TJ Inspection as an Inspector from approximately July 2021 until December 2022.

12. Throughout his employment with TJ Inspection, TJ Inspection paid Smoot a flat rate for each day worked regardless of the total hours worked in a day or week with no overtime compensation ("day rate pay scheme").

13. Smoot's written consent to be a party plaintiff is attached as **Exhibit 1**.

14. Smoot brings this action on behalf of himself and all other similarly situated TJ Inspection inspectors who were paid under TJ Inspection's day rate pay scheme.

15. TJ Inspection paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek in violation of the FLSA.

16. The collective of similarly situated employees or Day Rate Inspectors sought to be certified is defined as follows:

> **All current and former Inspectors employed by TJ Inspection who were paid a day rate with no overtime at any time during the past 3 years ("Day Rate Inspectors" or "Putative Collective").**

17. The Day Rate Inspectors are easily ascertainable from TJ Inspection's business and personnel records.

18. TJ Inspection may be served with process by serving its registered agent: **Tricia Junghanns, 6600 S Sooner Road, Oklahoma City, Oklahoma 73135**.

## COVERAGE UNDER THE FLSA

19. At all relevant times, TJ Inspection has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

20. At all relevant times, TJ Inspection has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

21. At all relevant times, TJ Inspection has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). TJ Inspection has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, computers, personal protective equipment, etc. – that have been moved in or produced for commerce.

22. In each of the last 3 years, TJ Inspection has had annual gross volume of sales made or business done of at least $500,000.

23. At all relevant times, Smoot and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

24. TJ Inspection uniformly applied its policy of paying its employees, including Smoot, a day rate with no overtime compensation.

25. TJ Inspection applied this policy regardless of any alleged individualized factors such as precise job position, job duties/responsibilities, client assignments, inspector type, or geographic location.

26. By paying its inspectors a day rate with no overtime compensation, TJ Inspection violated (and continues to violate) the FLSA's requirement to pay employees overtime compensation at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

27. As a result of this policy, Smoot and the Day Rate Inspectors do not receive overtime as required by the FLSA.

28. TJ Inspection's uniform compensation scheme of paying its employees a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

29. TJ Inspection is a pipeline inspection company headquartered in Oklahoma City, Oklahoma that "offers a complete list of inspection services" to its oil and gas industry clients.[1]

30. To complete its business objectives, TJ Inspection hires Inspectors, including Smoot and the Day Rate Inspectors, to perform pipeline inspection services to its clients, including inspecting, observing, and testing the workmanship and materials for compliance with

---

[1] https://www.tjinspection.com/about-us/ (last visited February 1, 2023).

its clients' policies, procedures, plans, and specifications, as well as all applicable codes and regulations throughout the United States.[2]

31. Many of these individuals worked for TJ Inspection on a day rate basis (without overtime pay).

32. These workers make up the proposed Putative Collective of Day Rate Inspectors.

33. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

34. For example, Smoot worked for TJ Inspection as a Welding Inspector from approximately July 2021 until December 2022 in and around Abilene, Texas.

35. Throughout his employment with TJ Inspection, TJ Inspection paid Smoot on a day rate basis, paying him $400 each day he actually worked.

36. Smoot and the Day Rate Inspectors work for TJ Inspection under its day rate pay scheme.

37. Smoot and the Day Rate Inspectors do not receive a guaranteed salary, nor does TJ Inspection guarantee Smoot and the Day Rate Inspectors any certain amount of pay per workweek.

38. Instead, TJ Inspection only pays Smoot and the Day Rate Inspectors an amount equal to the number of days worked times their respective day rates.

39. If Smoot and the Day Rate Inspectors did not work, they did not get paid.

---

[2] *Id.* ("TJ Inspection, Inc. complies with all appropriate safety and security laws, local, state, and federal guidelines, regulations and requirements… [and] emphasiz[ing] safety through the practices of the client's safety policies and procedures, as well as our own corporate safety policies and procedures.").

40. For example, Smoot received a day rate of approximately $400 (including various per diems) for each day he worked for TJ Inspection.

41. Smoot and the Day Rate Inspectors' day rates do not increase when they work more than 40 hours in a workweek.

42. Smoot and the Day Rate Inspectors do not receive overtime pay.

43. This is despite Smoot and the Day Rate Inspectors often working 10+ hours a day, for 5-7 days a week, for weeks at a time.

44. Although he typically worked 60+ hours/workweek, TJ Inspection never paid Smoot any overtime compensation.

45. Smoot and the Day Rate Inspectors work in accordance with the schedule set by TJ Inspection and/or its clients.

46. Smoot's work schedule is typical of the Day Rate Inspectors.

47. TJ Inspection knows Smoot and the Day Rate Inspectors work for 10+ hours a day, for as many as 7 days a week.

48. TJ Inspection's records reflect the fact that Smoot and the Day Rate Inspectors regularly work far in excess of 40 hours in certain workweeks.

49. Rather than receiving time and half as required by the FLSA, TJ Inspection pays Smoot and the Day Rate Inspectors a day rate regardless of the number of hours they worked in a day or workweek, and even if they worked more than 40 hours in a workweek.

50. TJ Inspection controls Smoot and the Day Rate Inspectors' pay.

51. Likewise, TJ Inspection controls all the significant or meaningful aspects of the job duties and inspection work Smoot and the Day Rate Inspectors perform.

52. As Inspectors, Smoot and the Day Rate Inspectors review construction documents, specifications, plans, policies, and procedures and apply well-defined, known industry and regulatory standards to ensure pipelines are constructed in accordance with TJ Inspection's clients' criteria.

53. TJ Inspection requires Smoot and the Day Rate Inspectors to follow TJ Inspection's and/or its clients' policies and procedures.[3]

54. Smoot and the Day Rate Inspectors' work must adhere to the quality standards put in place by TJ Inspection and/or its clients.

55. Smoot and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other inspectors in their respective positions) to perform their job duties.

56. Indeed, the daily and weekly activities of Smoot and the Day Rate Inspectors are routine and largely governed by standardized plans, procedures, and checklists created by TJ Inspection and/or its clients.

57. Virtually every job function is predetermined by TJ Inspection (or its clients), including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

58. TJ Inspection prohibits Smoot and the Day Rate Inspectors from varying their job duties outside of the predetermined parameters and requires Smoot and the Day Rate Inspectors to follow TJ Inspection's (or its clients') policies, procedures, and directives.

---

[3] *Id.*

59. In fact, TJ Inspection trains Smoot and the Day Rate Inspectors how to perform their inspection responsibilities at its in-house training facility.[4]

60. TJ Inspection exercises control over the hours and locations Smoot and the Day Rate Inspectors work, the tools and equipment they use, the reports they provide, and the rates of pay they receive.

61. All of TJ Inspection's Day Rate Inspectors perform similar inspection job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

62. Smoot and the Day Rate Inspectors do not have the power to hire, fire, or discipline any employees.

63. Smoot and the Day Rate Inspectors do not supervise other employees.

64. Smoot's working relationship with TJ Inspection is similar to that of the Day Rate Inspectors.

65. All of TJ Inspection's Day Rate Inspectors work similar hours and are denied overtime as a result of the same illegal pay practice.

66. All of TJ Inspection's Day Rate Inspectors work in excess of 40 hours each week and often work 60+ hours in a workweek.

67. TJ Inspection uniformly denies Smoot and the Day Rate Inspectors overtime for the hours they work in excess of 40 hours in a single workweek.

68. Smoot and the Day Rate Inspectors are not employed on a salary basis.

---

[4] https://www.tjinspection.com/training-center/ (last visited February 1, 2023).

69. Smoot and the Day Rate Inspectors do not, and have never, received guaranteed weekly compensation from TJ Inspection irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

70. TJ Inspection's policy of paying Smoot and the Day Rate Inspectors a day rate with no overtime compensation violates the FLSA because it deprives Smoot and the Day Rate Inspectors of overtime for the hours they work in excess of 40 hours in a single workweek.

71. TJ Inspection knew Smoot and the Day Rate Inspectors worked more than 40 hours in a week.

72. TJ Inspection knowingly, willfully, and/or in reckless disregard carried out this illegal day rate pay plan that deprived Smoot and the Day Rate Inspectors of overtime compensation in violation of the FLSA.

73. TJ Inspection knew, or showed reckless disregard for whether, the Day Rate Inspectors were not exempt from the FLSA's overtime provisions.

74. Nonetheless, TJ Inspection failed to pay Smoot and the Day Rate Inspectors overtime.

75. TJ Inspection has been sued before for its illegal day rate pay scheme that violates the FLSA. *See Farmer v. TJ Inspections, Inc.*, No. 5:22-CV-066 (W.D. Tex. 2022); *Lopez v. T/J Inspection, Inc.*, No. 5:16-CV-148 (W.D. Okla. 2016).

76. TJ Inspection's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

## COLLECTIVE ACTION ALLEGATIONS

77. Smoot brings this claim as a collective action under the FLSA.

78. The Day Rate Inspectors were victimized by TJ Inspection's day rate pay scheme, which is in willful violation of the FLSA.

79. Numerous other Day Rate Inspectors worked with Smoot and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

80. Based on his experiences with TJ Inspection, Smoot is aware that TJ Inspection's illegal practices were imposed on the Day Rate Inspectors.

81. The Day Rate Inspectors are similarly situated in all relevant respects.

82. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

83. The illegal day rate policy that TJ Inspection imposes on Smoot is likewise imposed on all Day Rate Inspectors.

84. Like Smoot, the Day Rate Inspectors are similarly denied overtime when they work more than 40 hours per week.

85. The overtime owed to Smoot and the Day Rate Inspectors will be calculated using the same records and using the same formula.

86. Smoot's experiences are therefore typical of the experiences of the Day Rate Inspectors.

87. The specific job titles or precise job locations of the various members of the Putative Collective do not prevent collective treatment.

88. Smoot has no interest contrary to, or in conflict with, the Day Rate Inspectors that would prevent collective treatment.

89. Like each Day Rate Inspector, Smoot has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

90. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent a collective action, many Day Rate Inspectors will not obtain redress of their injuries, and TJ Inspection will reap the unjust benefits of violating the FLSA.

92. Further, even if some of the Day Rate Inspectors could afford individual litigation against TJ Inspection, it would be unduly burdensome to the judicial system.

93. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Inspectors, as well as provide judicial consistency.

94. Smoot and the Day Rate Inspectors sustained damages arising out of TJ Inspection's illegal and uniform day rate pay scheme.

95. Smoot knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

96. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to TJ Inspection's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

97. Consistent with TJ Inspection's illegal day rate policy, Smoot and the Day Rate Inspectors were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

98. As part of their regular business practices, TJ Inspection intentionally, willfully, and repeatedly applied its day rate pay to Smoot and the Day Rate Inspectors in violation of the FLSA.

99. TJ Inspection's illegal day rate policy deprived Smoot and the Day Rate Inspectors of the premium overtime wages they are owed under federal law.

100. TJ Inspection is aware, or should have been aware, that the FLSA required them to pay Smoot and the Day Rate Inspectors overtime premiums for all hours worked in excess of 40 hours per workweek.

101. There are many similarly situated Day Rate Inspectors who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

102. The other Day Rate Inspectors are known to TJ Inspection, are readily identifiable, and/or can be determined by examining TJ Inspection's business records.

### CAUSE OF ACTION
### VIOLATION OF THE FLSA

103. Smoot incorporates all preceding allegations.

104. Smoot brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

105. TJ Inspection employed, or employs, Smoot and the Day Rate Inspectors within the meaning of the FLSA.

106. By failing to pay Smoot and the Day Rate Inspectors overtime when they worked in excess of 40 hours in a workweek, TJ Inspection has violated, and is violating, Section 7 of the FLSA. *See* 29 U.S.C. § 207.

107. TJ Inspection failed to pay Smoot and the Day Rate Inspectors overtime at rates not less than 1 and ½ times their regular rates in violation of the FLSA.

108. Instead, TJ Inspection paid Smoot and the Day Rate Inspectors a day rate with no overtime.

109. TJ Inspection knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Inspectors overtime compensation.

110. TJ Inspection's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

111. Accordingly, Smoot and the Day Rate Inspectors are entitled to their unpaid overtime wages, an equal amount as liquidated damages, and attorney's fees and costs.

## JURY DEMAND

112. Smoot demands a trial by jury.

## PRAYER

WHEREFORE, Smoot, individually, and on behalf of the Day Rate Inspectors, prays for the following relief:

   a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Inspectors allowing them to join this action by filing a written notice of consent;

   b. A judgment against TJ Inspection awarding Smoot and the Putative Members all their unpaid overtime compensation and an equal amount as liquidated damages;

   c. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

   d. An order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
TX Bar No. 24014780
OK Fed ID 14-145
**Andrew W. Dunlap**
TX Bar No. 24078444
OK Fed ID 14-148
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF AND PUTATIVE COLLECTIVE MEMBERS**